All right, ladies and gentlemen, we have two argued cases this morning. The first is Rotatable Technologies v. Motorola Mobility. The second is Ericsson, Inc. v. Beelink Systems, Inc. et al. They are both patent cases. The first case is case number 14-1042, and it's my understanding, Mr. Wang, that you want to reserve five minutes for rebuttal. Is that correct? Okay, you may begin. Good morning. May I please report? My name is Timothy Wang. I represent a patent, Rotatable Technologies LLC, and we are asking this Court to reverse some erroneous claim constructions imposed by the District Court in its marking order. And there are four issues before this Court, and I'm going to address the first one, which is the preamble term Selectively Rotating in Claims 9 and 14. And what the District Court stumbled on this morning, the erroneous construed as an imitation to the claims. And I said earlier that the District Court stumbled on its sole reliance on a single sentence in the prosecution history that was actually never intended to distinguish this patent from the prior art. Can you explain, whatever your intent was in making that statement, how would potential practicers of the patent or people wanting to find out how to avoid the patent and what they needed to avoid, how could they possibly read that objectively as anything other than an explanation of what the claim was limited to for the purpose of distinguishing prior art? Well, if you can look at basically, actually for this case it's pretty obvious if you look at the text of this office, it's basically the single statement in response to an office action. For your reference, it would be page appendix 149. The paragraph is starting at the end of 149, but the paragraph actually started on page 148. And as you can see here that it basically, like I said, this is not, the patentee was never intended to rely on this to distinguish from the prior art. This is the argument that he made trying to argue against the combination of two prior arts. One is Horvitz, another one is Jensen. Right, but even the page that you're citing, it says, by contrast, a window that has been collectively rotated to an angle other than 0, 90, 180, 270, 360 degrees as claimed, will have none of its edges parallel to the three X, Y, and Z axes. So you're actually telling the examiner that your claim includes the selectively rotated concepts and that that's why you wouldn't end up as being parallel to those axes. Yes, on its face it says as claimed, but if you look at the two references, Horvitz and Jensen, Jensen did disclose rotation to any angles. So as I said earlier, this patentee was trying to say that because Jensen already disclosed this rotation at any angle, combining the two will basically change the principle of operations in Horvitz. Because in Horvitz, what it does is that when you do a 3D rotation, the edges of the window has to be parallel to the three-dimensional axes, X, Y, and Z. That's the whole purpose that he's talking about here. Well, what about the fact that you later appealed to the PTAB from the examiner's denial, and you then say, again, by contrast, a window that has been, and this time you put it in quotes, selectively rotated, and then again you refer to that being as claimed. How are we supposed to assume that selective rotation is not an important feature of the claimed invention? Well, it is an important feature. It's actually the tenet of the invention. I think both parties agree. I understand that Pelleas argued at length in the briefing about, yes, the whole selective intent is the tenet of this invention. It is. But the thing is, if you look at the specifications, you have to look at the totality of the prosecution history. For example, this selective rotating is in the original claims, and it was first rejected over hallways, and it was overcome by adding the third element, which is the rotation in coplanar fashion, the third element, to overcome hallways. So then we come to this point, the 60-second office action, that the examiner changed his objection, saying that, okay, it's rejected over the combination now, with hallways and Jensen. And hallways and Jensen does have rotation at any angles. But the whole point, again, is the user selection, whether it be for something that's not to a preset number, or the user's selection to the preset numbers. In other words, the user has to be selectively making these choices. Does it not? Yes, it does. But again, it's the user's determination on these two modes of operations. If we disagree with you on whether or not this preamble is limiting, whether either in light of the written description as a whole or in light of your statements in the prosecution history and before the PTAB, is that the end of the inquiry on the other issues? Not necessarily. We do have additional issues here. And again, I'll just go back to this point about selective rotating. And we do need to look at, Your Honor, we do need to look at the totality of the prosecution history and what was the intent here. Well, I know you keep making this argument that, well, it's a big prosecution history and we're only talking about one sentence. But if the one sentence is very clear, are you saying that you have to say it more than once? Well, there's a reason for doubt here. It's much less of a clear and a mistake for disavowal of the plain script. Again, this is a forced argument against the combination of two prior arts. But go back to your original question. We do have other issues. Okay. What other issues do you want to address? Well, if the court wants to consider this as a limitation, though, and the district court's construction is also erroneous and it basically imposes a strenuous limitation of that, requiring that any angle of orientation must be chosen. And again, look at the specification of claims. And the district court's claim construction will be at least a violation of at least two claim construction principles. The first one is that it will weed out a preferred embodiment, which limits... Right, but again, that issue, we only reach that issue if we agree with you on the claim construction as it relates to selective rotation, because you don't disagree that the accused product wouldn't engage in selective rotation, correct? Well, it depends, again, how you define selective rotating. Okay. If we decide that the district court defined it correctly. So basically, you're saying if you agree with district court construction on the selective rotating computer display window? Yeah, if you do. I mean, they have to meet every limitation, right? Sure. Okay. All right. Let's talk about the indefiniteness issue for a minute. Sure. Obviously, you were relying heavily on the insolubly ambiguous language. I do understand it's a new standard now. Right. And so, I know it's kind of hard to do it without having had a chance to brief it, and the fact that it's a relatively new case, but why don't you tell us how, under the new standard, that you would be able to survive this indefiniteness finding? I think the new standard is that in the eyes of a person of ordinary security in the heart, and this specification will create a reasonable certainty to them. And, again, this argument is the same. If you look at the patent specification, actually, for your reference, it will be page 52, and we do have at least a couple of paragraphs talking about how do you select a rotating point, depending on the rotation point. Do you disagree with your opponent's argument that, in fact, the chart that you put in your brief that doesn't appear in the patent itself actually adds steps to your claimed algorithm that don't appear in the written description? Your Honor, we disagree. As we explained in the reply brief, there's no missing steps here. And, for example, for the steps talking about, if you look at column 4, the patent, basically page 52. What line? It will be 9. For example, in 9.28, this is a step that they claim to be missing. In this example, it's saying that some other rotation point will not be shown. And this is just talking about that, preferably, if one rotation point has already been chosen, that the other points will not be shown to the user. Basically, they will be hidden. How did this paragraph set out an actual formula or steps or an algorithm? To me, it just seems an example of the way an algorithm might work. But it doesn't actually state the algorithm here. Well, I think under the case law before this court that one could describe a formula or algorithm in prose. Well, I understand that, but I don't see in prose here that this describes an algorithm. It seems to me that it describes the output of an algorithm, and it would require somebody to infer what the steps were based on that. But I don't think our case law allows that, does it? Well, it does talk about in details here. It's talking about you having a pre-selected routine to pick points. And also, first of all, you could have a default point rotation. And then you have a pre-selected routine to allow the user to pick any rotation point he desires. Is your invention limited to these, I guess, nine points as the default rotation points? Or is this just an example of how somebody might do it? This is an example that a practitioner of this kind might do it. Well, then how do you address the question that this is just an example? It doesn't show the algorithm itself. To get to the algorithm, you'd have to think about this. And certainly a skilled artisan might be able to determine what the steps are here. But our case law says, at least for a means plus function test, you actually have to specify the steps and not have somebody fill in the steps from the gaps or inferences. Well, I think the only difference here is that this is talking about really how to determine rotation points, really the location of it, and where it is on this window or off the window. And the pattern does talk about all kinds of choices you could have. For example, you could have nine points on the window itself. And further talking about the next paragraph, you're talking about you could have a rotation point outside the window. And while I was programming before, what you do really is you need to know what this system must do and what scope it will be and what possible choices you have. And you can basically make it all available to the user. Okay. You're into your rebuttal time. We'll let you have the rest of your rebuttal time. Okay. May it please the Court. I would like to address the preamble and the indefinite issues. And first, I would like to point out one issue lurking in the briefs to make sure that it's clear what appellee's position is. At page 26 of appellant's brief, they take the position that there are numerous embodiments in column 3 of the specification and that we are reading embodiments out of the claims. I would like to make clear that at the relevant passage, which is column 3, lines 42 to 59, the patent is actually describing one embodiment. That's the embodiment of the rotation button on the screen, which you can exercise with the mouse in several modalities or functional ways. You can click and drag in order to go to any angle. You can click and release in order to go to a preselected angle. Or you can click twice to go back to home. That's one embodiment. And there are other potential embodiments referred to, such as menu selections, a cursor, that would also give you the choices of how to exercise the embodiment. But there is one embodiment that allows you to go, like the Studebaker radio, across a range of angles or stations or to selected angles or stations, depending upon how you use the functionality. And that's consistent with the claims number 2. You're not arguing, and as I understand it, that despite the claim that you were, you're not arguing that by selective rotation you would take out the option of a preselection. No, not at all. Rotating to a preselected angle. Quite the opposite. I think the ability, the capability to rotate to any angle includes the ability to go to selected angles if that's the function, the method, the modality of going to any possible angle that you'd like to exercise. And that's what appears in the claims. Claim 9, which is the independent claim like Claim 14, actually covers, as Judge Gilstrap construed, the ability to go to any angle so that you can call out in Claim 10 either what appellant calls re-rotation to any angle or in Claims 11 and 12, the preselected possibility. Let me ask you this. Is your case with respect to whether this preamble is limiting dependent upon that single sentence in the prosecution history, or do you believe that your argument could stand even without that single sentence in the prosecution history? I will give you two responses to that. The first response is the prosecution history is substantial. It's repeated twice, as Your Honor called out, including in quotation marks. But the cases also make clear that where the preamble language refers to a fundamental characteristic, and that's in Catalina, for example, a fundamental characteristic of the invention, that that further supports the preamble being limiting. That's what happened in this specification. You find in the beginning of Column 1, reference to selective rotation, it's referred to in the statement of the problem in Column 2 at Line 18, it's referred to as the solution to the problem at Column 2, Line 32, it's referred to in the description of the drawings, and it's referred to at the end of the specification in summing up the invention. The fundamental characteristic of this invention is selective rotation, so it's not just the fact that it was further defined in the prosecution history, but like in the court's polyamerica case that had to do with blown film being a fundamental characteristic of the invention, selective rotation here is a fundamental characteristic. What's your response to the argument that in the prosecution history it's not a clear disavowal because the point being made with respect to the prior art was really about the XYZ axis and the parallel and it was unnecessary to refer to selective rotation to make that distinction. Number one, I would submit to the court it is a clear disavowal, but beyond that it doesn't have to be a clear disavowal. The court's cases, such as Nystrom v. Trex, deal with definitions, utilizing statements in the prosecution history in a way that defines what the invention is, and that's what the applicant did here. Yes, the applicant was making arguments about why the references Horvitz and Jensen should not be combined, but the applicant made a clear statement about what the invention was in contradistinction to the references that they were arguing about, and the references repeated in the prosecution history are unambiguous that the invention, as claimed, includes rotation to angles other than 90 degree increments, so-called, perhaps, orthogonal angles. That is a statement repeated in the prosecution history that the invention includes going to any angle. That's consistent with column 3, line 29. It's consistent with the claim structure. So this is a case where the specification, the claims, and that statement in the prosecution history all work together to confirm that the invention includes the ability to go to any angle, whether you choose to click and hold, and thereby go to the angle you choose, 310 degrees, for example, which is not a 90 degree increment shown in figure 2, or click and release, which can go to pre-selected increments. It's consistent between the specification, the claims, and those statements in the prosecution history. Can I ask you about the relation between a couple of issues here? Is it right that if we agreed with the district court about selectively rotating, we need not decide anything else, including indefiniteness, because the only judgment is a judgment of non-infringement, and any counterclaim with respect to invalidity was dismissed without prejudice? Your Honor, I believe the answer to that question, first of all, is yes. If you find that the preamble is a limitation and agree with Judge Gilstraps of that limitation, it leads to non-infringement, and in fact, that's been stipulated to in the stipulated judgment of dismissal. So if you affirm on that single ground alone, appellants have already agreed in the judgment that that leads to non-infringement and the case is over. The same is true if you agree on the second ground, which is rotating the window, about the rotation point at the discretion of the user. That alone, because of the judgment and the stipulation, would be a ground for affirmance. Either way, you don't need to reach the indefiniteness issue. And the only thing I will say about that issue for the moment is that I submit, and the court may have been going there, but I submit that this is a case which we would apply your function media decision to, which is a case that says it doesn't work to say that a person of ordinary skill in the art would be able to develop the algorithm. That's pretty much what the flowchart had observed. If the flowchart in their brief were in the specification somewhere, would that be enough? If the flowchart were in the specification, which it's not, it may come close to being enough. I think it is a flowchart that recites the steps that appellants would like to see be taken in order to determine the rotation point. And if we could match up things in the specification to support that flowchart, would that be enough? No, it would not, Your Honor, because what that still leaves lacking in the specification is anything beyond the functionalities of the manufactured flowchart. It tells you what you'd like to see be done. It doesn't tell you how to do it. And if you look at what's in the patent... I'm confused by that response. So the flowchart would be enough if in chart form, but it's not enough in flowchart? Well, maybe I spoke too quickly. Maybe my answer ought to be I doubt that it is enough. I'm thinking what I saw in the flowchart in terms of turning it into steps. Yes, it turns it into steps, but no, those steps are still stated in functional terms. They still don't tell anybody what to do. So what would need to be in the written description to not be indefinite? Some kind of a teaching of how to select another point, not just the fact that there are nine possible points shown on the window and the statement that there could be many other points off the window, but a statement of how to select one, particularly if you're going to select one that's not on the window. How do you do that? There's no suggestion in the specification of how to do that. So to say select a point is still a functional statement. Well, if they said click the mouse, would that be enough? Probably not, because you click the mouse, what does that do? What is there that suggests how there's a relationship between the mouse, some kind of a structural relationship between the mouse and clicking the mouse and picking a point three inches off the computer display window to be the rotation point? How do you do that? How do you go from an undefined point three inches off the display window to establishing in the context of column four that that's going to be the rotation point? It's just a statement that says do it. It doesn't tell you anything about how to do it. So I would conclude that even if you adopt that flowchart, it still doesn't get you there. But my fundamental position is the flowchart is not in column four. I understand. Prosaically. I'm looking at the flowchart, at least the version on page 39 of the Blueberry. It seems pretty, I mean it's not detailed, but it seems pretty clear to me. You start the pre-selection routine, you set a default rotation point, and it explains how you do it. If they're not allowed to select it, it uses the default one. If they are, it displays the possible ones that can be selected. The user selects them, and then it removes the non-selected ones. I mean it doesn't say click the mouse, but I don't think, I don't see why it has to be that specific that it tells a person to click a mouse. Why isn't this flowchart good enough? Display rotation points, Your Honor, the first box on the right, display rotation points that can be selected by the user, that's supposed to include an unlimited number of possible display points that are outside the computer display window. How do you choose them? How do you display them? Which ones do you display? Is this going to be like one of these video games now where you have thousands and thousands of players that are displayed on the screen? How are you going to display them? How do you choose them? Which ones are displayed? This is just a functional statement. If you're correct, and it's simply a circular version, you know what the points are, right? There's a limit within the scope of the computer screen which is larger than the particular display window, but there's still an enormous number of possible points outside the window which could be chosen. I don't think this tells you anything about how to choose them, which ones to choose, which ones to display. And then in terms of the further step of removing non-selected rotation points from the display, that may be intuitive. It may be the kind of thing that a person of ordinary skill in the art would conclude he has to do, but there's nothing in here about how to do that other than just saying push a button and make it happen. So I think on that issue of indefiniteness, I don't think the manufactured flowchart gets you there when the spec at line, for example, 31 says one of ordinary skill in the art will realize that any number of points are potential points. Such skilled persons will realize that any number of points outside the windows may be selected. That is directing the person of ordinary skill in the art to go and do what's not provided for in column four, and I would submit that under function media, that's not sufficient for the indefiniteness issue. But again, I don't think you need to get there if you agree with Judge Gilstrap that the combination of what's taught in the specification as the actual disclosure of an embodiment with its various capabilities matches up with what's in the claims, and the claims enable you in the broad independent claims to cover any of what is in the dependent claims. Then you further narrow down that by the rotation comprising what Appellant calls free rotation in claim 10 or selective rotation in claims 11 and 12, that the basic claims nine and 14 have and indeed must have the capability that's described in column three starting at line 39 to go to any desired angle in order for the various choices then to be made. Can I just ask this question using your old-fashioned car radio example? In your view, does this claim cover the radio without the dials and just the preset buttons? Claim nine, the independent claim does not. It claims all of the capability. You need the dial as well. You need it because you have to have the ability to go to any angle. So whether it's a Studebaker or a Lexus where you just push single arrows or double arrows in order to be able to tune gradually or tune to presets, it has to have both. But a radio that came with, I don't know, just a little number five buttons or something, I forget how many there used to be, but just five or maybe 12. That would not. It didn't allow any changing of those preset ones. That would not be covered. That would not. You have to have the capability to go to any station in order to be within the scope of claim nine and claim 14. As I submit, Judge Gilstrap included in his claim interpretation. Although would I, am I remembering correctly or incorrectly that to cover, that for purposes of non-infringement, you don't need to go, need something that goes to any just more than what you have two options in the case. Even if you looked at the language of the prosecution at history as saying you have to do more than 90 degree angles and therefore there has to be only one. There still has to be one angle other than 90 degrees. And in the accused instrumentalities, there is no angle other than 90 degree increments. So even the one angle more than the 90 degree increments still requires affirmance of the judgment. Anything else? Okay, thank you. Thank you very much. All right, you have just over three minutes, Mr. Wang. Thank you. Just a couple of quick points here. First of all, we do disagree that the district court's construction on circuit rotating will cover both and both operations because you cannot have three chosen angles and limited choice of orientation at the same time by just saying, okay, you allow rotation of any angle that covers both. You cannot be limited and free of both. That's just one point I want to say. Another thing is that contrary to what the appellees have argued that the district court's claim section is solely based on this statement. And actually I had a question for the appellees that if we all agree that this is a tenet of the invention, why does the inventor have to rely on this thing within the preamble to make the point about selector rotating? Why he had to do that? It's all over the place, selector rotating. So that's why it's in the body of the claim already. The body of the claim is complete. It describes in three steps how to do selector rotating. And this also violates, basically it renders claim number 10 superfluous because claim number 10 is an embodiment that's talking about rotation at any angle. And claim 11, which is a dependent claim again, is limited to rotation at preselected orientations. It just does not make sense. That does not connect by relying on this one single sentence here in the prosecution history. That's one thing. The last point I want to make is about the indefiniteness. And yes, we do disagree. I think the specification, if the flowchart is being matched in the specification, it is more than enough to tell you how to determine the rotation point. It's not a single rocket science task to determine your point or rotation. You've got line choice on the window already. And if you're outside the window, it tells you what the principle to apply to do that. It's on column 4. It's all two paragraphs up there. It just tells you the details, what you need to do to determine one point. That's it. And that's because this claim is talking only about how the machine does it. It's not telling the user how to do it. So as long as it says to the machine, use the default or accept the one that somebody tells you to do after displaying options, it doesn't matter that the spec doesn't direct the user how to make his selection. That's correct. All you need to do is provide interface to allow the user to pick and choose. And the machine will read whatever input the user  Okay. Thank you. Thank you, Your Honor.